Pendleton, J.
refused to permit the defendant to go into any proof of possession against a grant, under the great seal of the state ; as none, he said, was admissible against the above maxim of the common law ; or to suffer the defendant to give the will in evidence : so that there was a
Verdict for plaintiff.
Afterwards in Charleston. Present, at the Adjourned Court, June, 1786,
Pendleton, Burke, Heyward and Grimke, Justices.
A NEW trial was moved for by the defendant’s counsel, on the ground, that the judge who tried the. cause, had refused to admit such testimony as ought to have been permit- *28 led to have gone to the jury on the trial; to wit, the presumptive evidence of a grant, by length of possession, and the will of Murphy, the defendant’s grandfather. And in support of the motion, it was argued, that by the act of as» sembly, passed in 1712, a quiet and uninterrupted possession for five years, except in cases of disability therein mentioned, then seven years possession, gives a title to lands against all the world. There is no exception in that act with respect to the claimant, whether the king, lords proprietors, (this state being then under their government,) or individuals. The terms of the act are so broad and comprehensive, as to leave no room for doubt on the subject. That the “ nullum tempns” principle, was never contended for, but by kings only ; and, like most of the royal prerogatives', was a mere usurpation, in order to acquire and retain power to aggrandise the monarch. That republics were founded on other principles. They had for their object, the accommodation, the good, and the happiness of the individuals who composed them. • The security of natural rights is a primary consideration with them ; and occupancy is the first and most natural right of mankind. Every infringement on it, is an encroachment upon a natural right, which no refined system of princely policy could justify. If, however, the principle could be considered as of force in this country, when it was originally annexed to the crown of Great Britain ; yet, when the king parted with his right to the lords proprietors, this right went with it. And the act of 1712, for quieting the possession of the inhabitants of the then province, passed while it was under their jurisdiction. This act, it is evident, unqualifiedly disclaims this right to all actual settlers. And when the lords proprietors aliened or conveyed back the right of soil and jurisdiction to the crown, there is no mention of this right, which had been thus disclaimed by them. ‘ This act of 1712, was a kind of charter, betwfeen the lords proprietors and the citizens-of South-Car olma, which has never yet been revoked or annulled. But supposing this right to have been originally inhe *29 rent in the crown, and that it had never been surrendered by the lords proprietors ; yet the revolution altered the nature of public rights, and all the feudal and royal principles which governed them, from which it was contended that this “ nudum tempm” principle originated, ought not to be considered as a part of the common law of this state, adopted by our .'onstkution ; but, like the e<. clesiastical jurisdiction, and feudal rights, had become obsolete, and totally inapplicable to chc circumstances and local situation of this country.
It was next contended, that if the whole of the doctrine urged against the “ nullum tempus” principle, should fail ; ciili the evidence of possession ought to have gone to the jury, as presumptive evidence of the existence of a grant ; which might have been lost, mislaid, or destroyed. That this was a point proper for the consideration of a jury, and came peculiarly within their province. A grant or charter from the crown or state, which ought to be by record, mav, under some circumstances be presumed. Possession for a great number of years, was by the court held to be a sufficient ground of presumption of such a charter to be left to the jury. Cowp. 102. 110. A presumption from mere length of time, which is to support a rights is very different from a presumption to destroy it. Cowp. 216. Though the record be not produced, nor any proof of its loss, yet under circumstances it may be left to a jury or court of equity, to presume there was such a charter; because the proof of such circumstances, as could not have happened without the existence of such a deed or charter, is strong presumptive evidence, that there was such a deed or charter, once in being. Coxvp. 110.
It is further laid down as clear law, in 2 Burn. £s? Hast, ÍSÍ. 158, 159. that grants, letters patent, and records, may all be presumed from length of time. And that such deeds, or grants, &c. may be pleaded as lost by time or accident, without a profert. From these authorities, therefore, it was contended, that this kind of proof, ought to have been permitted to have gone to the jury, as presumptive evi *30 dence of the existence of a grant from North-Carolina, qr this state, to Murphy; but which had been lost, or destroyed, by time or accident: and particularly the will of Murphy, who, it is presumed, never would have devised it to his grandson, unless he had had some grant or conveyance for the land in question.
The plaintiff’s counsel, in reply, took nearly the same grounds as at the trial. But,
The Court, after hearing arguments on both sides fully, was of opinion that evidence ought to have been permitted to have been given to the jury, to prove the length of possession by the plaintiff’s grandfather and father, as presumptive of the existence of a grant from one or other of the states, which might have been lost by time, or accident; also the will of the plaintiff’s grandfather as corroborative of this presumption.
A new trial was therefore ordered.
On a second trial there was a verdict for the defendant.

N. B.

The judges declined giving any opinion on the “ nullum tempus” principle, as the other ground justified them in granting the new trial. But it has since been determined in the constitutional court of appeals, that no time, or length of possession shall run against the state. See vol. 2.